**SO ORDERED: January 15, 2020.**



**Robyn L. Moberly**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CLARICE JOANN DUITS | ) | CASE NO. 14-05277-RLM-13 |
| | ) | |
| Debtor | ) | |
| | ) | |

**ORDER DENYING DEBTOR'S MOTION FOR ORDER OF CONTEMPT**

This matter came for hearing before the Court on January 6, 2020 on the Debtor's Motion for Order of Contempt, seeking sanctions against National Collegiate Student Loan Trust ("NCT")  and its attorneys, Weltman, Weinberg & Reis Co., LPA, ("Weltman") for their alleged willful violations of the discharge injunction.  For the reasons stated below, the court denies the motion.

*Background*

The debtor obtained no fewer than five loans between 2005 and 2007 from JPMorgan Chase ("Chase") to pay education expenses.  In each case, the debtor

signed a "non- negotiable credit agreement".  In at least two of the credit agreements, the following language appeared in bold:

> **I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code.  Specifically, I understand that you have purchased a guaranty  of this loan, and that loan is guaranteed by The Education Resource Institute, Inc. ("TERI"), a non-profit institution.**

The remaining credit agreements contained substantially similar, and additional, language:

> **I understand and agree that this loan is an education loan and certify that it will be used only for costs of attendance at the School.  I acknowledge that the requested loan is subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code because either or both of the following apply: (a) this loan was made pursuant to a program funded in whole or in part by The Education Resource Institute, Inc. ("TERI"), a non-profit institution or (b) this is a qualified education loan as defined in the Internal Revenue Code. This means that if, in the event of bankruptcy, my other debts are discharged, I will probably still have to pay this loan in full.**

The debtor does not dispute that TERI guaranteed the loans.

The debtor filed her chapter 13 case on June 3, 2014.  By that point, NCT had acquired the loans and subsequently filed 5 separate proofs of claim in the bankruptcy case.  No action to determine the dischargeability of the loans was filed during the pendency of the case and the debtor received a chapter 13 discharge on September 21, 2019.

In early November 2019, Weltman sent the debtor letters seeking collection of the outstanding loans. The debtor has moved for the Court to hold NCT and Weltman in contempt of the discharge order and seeks sanctions for violation of the discharge injunction. Section 524(a)(1) enjoins the collection of discharged debts. The debtor maintains that the loans here were discharged because they do not fit under the exceptions to discharge found in §523(a)(8).

*Section 523(a)(8)*

Section 523(a)(8) provides that a discharge under Section 727 does not discharge a debt:

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

This section envisions three distinct scenarios under which an education loan or benefit is excepted from discharge. The first (§523(a)(8)(A)(i)) deals with loans where government units or nonprofit institutions are involved. The third (§523(a)(8)(B)) involves education loans that are defined under in 26 U.S.C. §221(d) as "qualified education loans".

The debtor argues that the loans were not excepted from discharge under the second scenario in 523(a)(8)(A)(ii) and in support of that assertion refers the Court to the case of *Crocker v. Navient Solutions, LLC (In re Crocker),* 941 F.3d 206 (5th Cir. 2019). The debtor in *Crocker* successfully argued that the loans she borrowed to take the bar exam and use for career training were discharged and thus, the lender who pursued collection post discharge was in violation of the discharge injunction.

The loans in *Crocker* did not fit under the first scenario of §523(a)(8)(A)(i) because they were private loans that had not been made or guaranteed by a governmental unit or a nonprofit institution. Nor did they qualify as education loans under the Internal Revenue Code under the third scenario of §523(a)(8)(B). The only alternative for the lender was to argue that the loans were excepted from

discharge under the second scenario of §523(a)(8)(A)(ii).  The *Crocker* court held that §523(a)(8)(A)(ii) applies "only to education payments that are not initially loans but whose terms will create a reimbursement obligation upon the failure of conditions of the payments" and that the "educational benefit" provided for in that section "is limited to conditional payments with similarities to scholarships and stipends".  *Id.* at 223.  The obligation in *Crocker* definitely was a "loan" and repayment was unconditional.  It did not fit within the §523(a)(8)(A)(ii) exception and thus was discharged.

The Court agrees that the loans here do not fit under the second scenario of §523(a)(8)(A)(ii) and thus are not excepted from discharge *under that section* for those same reasons.  However, an education loan is nonetheless excepted from discharge if it fits any of the scenarios under  §523(a)(8).

Based on the evidence presented, the loans here fit both the first and the third scenarios.  They were initially funded by a private lender but were guaranteed by TERI, a nonprofit institution.  Even if the debtor had shown that TERI did not fund the loans or even pay the initial lender on the guaranty is of no significance because TERI's guaranty  "helps fund a program because it encourages a lender to extend credit that may not be otherwise available." *In re Greer-Allen*, 602 B.R. 831, 838 (Bankr. D. Mass. 2019). A majority of the courts considering the dischargeability of TERI-guaranteed loans have held that a TERI guarantee comes under the broad definition of "funded" as that term appears in §523(a)(8)(A)(i).  See, *In re O'Brien*, 419 F.3d 104, 106  (2nd Cir. 2005) (TERI's guarantee satisfies the "funded" requirement of §523(a)(8)(A)(i) because TERI was clearly devoting some of its financial resources to supporting the guaranty program); *In re Taratuska*, Civil Action No. 07-11938-RCL, 2008 WL 4826279 at *4 (D. Mass. August 25, 2008) (TERI played a meaningful part in procurement of the loan because the for-profit entity's funding of the loan was conditioned upon TERI's participation in guaranteeing the loans); *In re Holguin,*  No. 15-11410-j7, Adv. No. 18-1042J, 2019 WL 6880081 (Bankr. D. N. M. December 17, 2019.

The credit agreements signed by the debtor provided, and the debtor does not dispute, that the loans were also "qualified education loans" as defined in the Internal Revenue Code, meeting the third scenario in §523(a)(8)(B).

Accordingly, the loans were excepted from discharge under §523(a)(8)(A)(i) and §523(a)(8)(B).  NCT and Weltman attempted to collect debts that had not been discharged and that is not contemptuous conduct under §524(a)(1).  The Debtor's motion is DENIED. [1]

# # #

---

[1] Post hearing, the debtor and creditor brought to the Court's attention for the first time that the TERI program is now defunct.  The Court gave the debtor a week in which to review the effect of TERI's current defunct status upon the loans here, and, if TERI's later demise is relevant, to request an additional hearing.  The debtor has not requested an additional hearing.  While not an issue in this case at this point, the Court surmises that it would be extraordinarily unusual for TERI's subsequent demise to retroactively alter JPMorgan Chase's, and later, NCT's, contractual rights with respect to TERI's obligations under the guaranties.